1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Raymond Max Snyder
PO Box 69
Aurora, Utah 84620
Phone: 801-641-6844
maxsnyder@yahoo.com

FILED US District Court-UT
JAN 05 '24 AM 10:50

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

RAYMOND MAX SNYDER

        Plaintiff,

vs.

FOURTH JUDICIAL DISTRICT COURT IN AND FOR UTAH COUNTY, STATE OF UTAH

AND

JUSTIN D. HEIDEMAN, THOMAS R. MCCOSH, GARY GUELKER, LAUARA ANN LISK,  HEIDEMAN & ASSOCIATES, A LAW FIRM, AND RESNICK & LOUIS PC, A LAW FIRM

AND

JOHN AND JANE DOES 1-10.

        Defendant(s)

Case No.:

COMPLAINT
AND
JURY DEMAND

Case: 4:24-cv-00002
Assigned To : Kohler, Paul
Assign. Date : 1/5/2024
Description: Snyder v. Fourth Judicial
District Court et al

Plaintiff, Raymond Max Snyder (Max), pursuant to Rule 8(a), Fed.R.Civ.P.,

complains and alleges for a cause of action against Defendant(s) as follows:

## PRELIMINARY STATEMENT

COMPLAINTANDJURY DEMAND - 1

This is a civil rights action in which Max, seeks relief for the Defendant's violation of his rights guaranteed by the United States Constitution, specifically, the Fifth and Fourteenth Amendments, which rights are further secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983 and § 1988, and by the laws and the Constitution of the State of Utah. Plaintiff seeks damages, both compensatory and punitive; affirmative and equitable relief; an award of attorney's fees, costs, and interest; and other and further relief as this Court deems just and equitable. This is further action at law to redress a deprivation under color of statute, ordinance, regulation, custom, or usage of a right, privilege, and immunity secured to the Plaintiff by the Fifth and Fourteenth Amendments of the Constitution of the United States and arises under the law and statutes of the State of Utah.

## I.    The Parties to This Complaint

### A. The Plaintiff

Raymond Max Snyder,
Address                     PO Box 69
                            Aurora, Utah 84620
County                      Sevier
Telephone Number            (801) 641-6844
Email Address               maxsnyder@yahoo.com

### B. The Defendants

Fourth Judicial District Court, Utah County, State of Utah
Address                     775 West Center Street
                            Spanish Fork, UT 84660
                            Email: sffiling@utcourts.gov

COMPLAINTANDJURY DEMAND - 2

Justin D. Heideman
and
Heideman & Associates
Address

2696 N. University Ave. Suite 1800
Provo, Utah 84604
Telephone: 801 472-7742
Email: jheideman@heidlaw.com

Resnick & Louis, PC
and
Gary R. Guelker (8474)
Address

222 South Main Street, 5th Floor
Salt Lake City, Utah 84101
Telephone: 801-960-3655
Email: gguelker@rlattorneys.com
Attorneys for Defendant Thomas R. McCosh

Thomas R. McCosh
Address c/o

Resnick & Louis, PC
222 South Main Street, 5th Floor
Salt Lake City, Utah 84101
Telephone: 801-960-3655
Email: gguelker@rlattorneys.com
Attorneys for Defendant Thomas R. McCosh

Lauara Ann Lisk
Address

PO Box 4190
West Wendover, Nevada 89883
Telephone: 801-891-7260
Email: Lauara@yahoo.com

## II.     Basis of Jurisdiction

A. This suit is against a State district court (a 1983 Claim). This action arises

under the United States Constitution and federal law, particularly under the

provisions of the Fifth and Fourteenth Amendments of the Constitution of the

United States, and 42 U.S.C. §§ 1983 and 1988.

B. This action seeks redress for violations of the civil rights laws of the United States, and jurisdiction is therefore invoked pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

C. The claims made in this Complaint occurred and arose in the State of Utah, and in the District of Utah. Venue is therefore proper under 28 U.S.C. § 1391 and 28 U.S.C. § 1331.

D. Plaintiff is seeking damages under federal law pursuant to the claims for relief specified below, in amounts to be proved at trial.

E. This Court has the authority to award costs and attorney fees pursuant to 42 U.S.C. § 1988.

F. This Court also has jurisdiction over any pendant State claims Plaintiff may wish to bring or has brought, pursuant to 28 U.S.C. § 1367.

G. This Court also has jurisdiction over pendant State claims Plaintiff may wish to bring, or has brought, pursuant to FRCP Rule 60(b)(1), (b)(2), and (b)(3).

**Questions to be asked.**

1. Are pro se parties entitled to the protection guaranteed by the Fifth and Fourteenth Amendments?

2. Are licensed attorneys exempt from prosecution for violating the criminal laws of the State of Utah and the United States?

**III**   **Statement of the Claim against Justin Heideman, Thomas McCosh, Gary Guelker, Lauara Ann Lisk, Heideman & Associates, and Resnick & Louis PC.**

COMPLAINTANDJURY DEMAND - 4

1.     Plaintiff, Raymond Max Snyder (Max) and Lauara Ann Snyder (Lauara) were married on October 13, 2001. It was Max's third marriage and Lauara's second. No minor children were involved.

2.     Max had been debt-free for several years and owned his home outright. Lauara was under-water in debt.

3.     Max put his name on Lauara's loans and the couple paid off the Nevada businesses and home.

4.     In December 2017 following Lauara's leaving him, Max filed for divorce in Elko, Nevada, Case No, DR-MD-17-757. At that time, Lauara and her Nevada Attorney, Shawn B. Meador had been secretly scripting Lauara's Divorce from Max since March of 2017.

5.     Following Max's filing for divorce Lauara named Max's son Casey Snyder (Casey), as a defendant in the couple's divorce. Casey retained attorney, Justin Heideman (Mr. Heideman), of Heideman & Associates as his attorney.

6.     Max's first attorney in his divorce from Lauara was removed from the case by the district court for a conflict of interest. Max hired Debra Amens (Ms. Amens) to represent him.

7.     On March 26, 2029, Max's attorney, Ms. Amens disposed Lauara. Mr. Heideman was present at Lauara's deposition representing Casey.

8.     At her deposition, Lauara first disclosed that she had allowed her

son, Adam Lisk (Adam), to place $650,000 the couple had lent Adam in her son's LLC

bankruptcies. At this time first Mr. Heideman became aware that Lauara secretly placed

the couple's loans to Adam in Adam's LLC bankruptcies.

9.    On June 25, 2019, Max entered into a flat-cap contract with

Casey's attorney, Defendant Justin Heideman, and Defendant, Heideman & Associates

(collectively the Heideman Defendants), to provide legal services for Max in connection

with his divorce from Lauara in Elko, County Nevada, and in the debt collection from

Max's son-in-law, Adam, Lauara's son in North Carolina whom Lauara had allowed to

put the $650,000 in loans the couple made him in his LLC bankruptcies.

10.    Max's flat-cap contract with Heideman was to cover all of Max's

costs in Nevada and North Carolina going forward.

11.    Following retaining the Heideman Defendants, Max dismissed

his Nevada attorney, Debra Amens (Ms. Amens).

12.    The district court declined to allow Mr. Heideman to represent both

Max and Casey while Casey was still a party in the divorce. Ms. Amens then reinstated

herself as Max's attorney until such a time that Casey was no longer a party in the

divorce and Mr. Heideman could take over Max's representation.

13.    The flat-cap contract obligated Heideman to pay Ms. Amens until

such time as he would be allowed to represent Max.

14.    Ms. Amens received discovery from Lauara's attorney, Mr. Meador,

but declined to furnish it to Max or Mr. Heideman because Mr. Heideman refused to pay

Ms. Amens.

15.    The contract with Heideman required Heideman to cover all of Max's costs associated with the Nevada divorce and the North Carolina case, including but not limited to all attorney fees for Max's Nevada and North Carolina attorneys.

16.    It was acknowledged that Max had given Mr. Heideman the bulk of his funds to represent Max in both Nevada and North Carolina.

17.    Mr. Heideman declined to pay the attorneys in North Carolina. As a result, the North Carolina attorneys quit leaving Max unrepresented in North Carolina.

18.    In the course of handling Plaintiff's legal matters, and following Casey being released from the divorce the Heideman Defendants failed to honor the contract with Max and quit, kept all of Max's funds, and left Max represented by an unqualified new attorney, Aaron Bushur (Mr. Bushur), who was not up to speed and ultimately left Max to represent himself.

19.    Ms. Amens quit accepting documents on behalf of Max shortly before the divorce trial and filed a claim against Max with the court for her unpaid fees. During this time Ms. Amens had refused to file pleadings on Max's behalf and refused to provide Max or Heideman with the pleadings filed against Max.

20.    At trial, Max lost everything.

21.    Max appealed the divorce to the Nevada Court of Appeals and prevailed.

22.    Max filed suit in the Fourth Judicial District Court, Utah County,

State of Utah, Case No. 220300136 against the Heideman Defendants and attorney Thomas R. McCosh an associate attorney with Heideman & Associates.

23.    The Heideman Defendants were represented by Justin Heideman. Thomas McCosh (Mr. McCosh), retained the firm of Resnick & Louis PC and its attorney Gary R. Guelker (the Resnick Defendants).

24.    On 09/27/2022 Max filed a Cross-Motion for Summary Judgment against the Heideman Defendants including Mr. McCosh.

25.    Defendant, Lauara had assisted the Heideman Defendants in obtaining an improper ruling against Max by claiming Max was a vexatious litigant. Following Lauara's assistance, on November 7, 2022, the Heideman Defendants filed VERIFIED OPPOSITION TO PLAINTIFF'S RESPONSE TO LETTER FROM LAUARA LISK REGARDING SUBPOENA… referencing their motion to have Max declared as a vexatious litigant, following corresponding with Lauara and Lauara confirming that another judge, Judge Faust, had entered a contested foreign judgment from couple's the divorce against Max, and had later declared Max vexatious following Max exposing that the Nevada Court of Appeals had overturned the couple's Divorce Decree following Max's pro se appeal. See Exhibit C1.

26.    On 02/21/2023, Max filed a Notice to Set for Decision his Cross-Motion for Summary Judgment against the Heideman Defendants.

27.    On March 21, 2023, the district court heard the Heideman Defendants and the Resnick Defendants' Motion to declare Max a vexatious litigant. See

Exhibit C2 Transcripts of the Motion hearing.

28.    Max argued and cited the case of Stan(sp) v. Napetco(sp) (*Stand v. Nupetco* Utah Court of Appeals decision in *Stand v. Nupetco*, No. 20151016-CA 03-30-2017; ) reading the Utah Court of Appeal's order word for word confirming that Max could not be found vexatious. See Exhibit C2. Pg 32:17-37:10.

29.    The district court ruled that Max was vexatious based solely on the ruling by Judge Faust that Max was vexatious following Max prevailing in the Nevada Court of Appeals and the judgment against Max entered by Judge Faust being remanded back to the district court. Based solely on Judge Faust's improper ruling the district court and Judge Jared Eldridge (Judge Eldridge) ordered that Max was vexatious and could not file papers without an attorney. See Exhibit C2, page 43:15-47:6.

30.    The ruling in Stand v. Nupetco, citing Rule 83 confirmed that if Max stood a "reasonability probability" to prevail he could not be declared vexatious. See Exhibit 2 page 25:8-16. This required a review of Max's pleadings by the court prior to ruling Max was vexatious.

31.    Max asked the district court to read his Cross-Motion for Summary Judgment. See Exhibit C2 page 37:5-10. The district court declined to read Max's Cross-Motion for Summary Judgment and returned it to Max with its exhibits unfiled, violating Max's due process and his civil rights. The district court had no idea how strong Max's Cross-Motion for Summary Judgment was. See Exhibit C3, Docket 09-27-2022 showing the pleading but no Exhibits. It confirmed the Exhibits were on a USB but not recorded

by the district court. Max's Cross-Motion for Summary Judgment and the USB with the exhibits were returned to Max unreviewed.

32.   Judge Eldridge requested Mr. Heideman draft the Order declaring Max a vexatious litigant.

33.   The Order was prepared by Heideman and signed by attorney Gary Guelker on behalf of Mr. McCosh, and by the district court. The Order falsely stated on page 3, No., 6,

> Without reaching the merits of the underlying action and without deciding any dispositive motions now before the Court, the Court FINDS by clear and convincing evidence that there is no reasonable probability that Raymond Max Snyder will prevail on this claim.

**The district court could not have decided this required element of Rule 83.** It never read any of Max's pleadings. Nothing resembling this quote exists in the transcripts. It was added by Heideman to prevent Max from being able to hire counsel. The Order violated URCP Rule 11, URCP Rule 60, and Rule 83. This was also an intentional violation of Max's due process and civil rights by the Heideman Defendants, the Resnick Defendants, and the district court which refused to review Max's pleadings prior to finding Max vexations.

34.   On June 22, 2023, Gary R. Guelker of Risnick & Louis, attorneys for Mr. McCosh filed with the district court, DEFENDANTS' MOTION TO DISMISS FOR PLAINTIFF'S FAILURE TO COMPLY WITH THE ORDER DECLARING PLAINTIFF A VEXATIOUS LITIGANT, for Max's failure to obtain counsel. Mr. Guelker requested the district court dismiss Max's "claims in their entirety, with

COMPLAINTANDJURY DEMAND - 10

prejudice, based on plaintiff's failure to comply...", Max's failure was his inability to

find an attorney following Mr. Heideman's Order violating Rules 11, 60, and 83, stating

Max stood no chance to prevail.

35.    The district court specifically stated that it would only entertain a

motion to dismiss without prejudice if Max did not retain counsel. See Exhibit 2. The

March 21, 2023, hearing transcripts page 49:22-50:3.

36.    Mr. Heideman drafted an Order signed by Mr. Guelker and the

district court, violating Rule 11, Rule 60, and Rule 83, and violating Max's civil rights by

stating the court had decided Max stood no chance to prevail when the court had declined

to review a single pleading. Mr. Guelker and Mr. Heideman again violated the district

court's orders and violated Max's civil rights by filing an order dismissing all of Max's

claims with prejudice in direct contradiction to the judge's orders and Rule 83.

37.    It needs to be noted Mr. Heideman cited in his Order signed by the

the district court, Max's suit against the divorce trial judge, Robert E. Estes (Judge Estes),

in the U.S. District Court of Nevada, Case No. 3:23-cv-00048-ART-CSD. Ironically, the

U.S. District Court of Nevada found that Judge Estes had not disputed Max's claims

against him. Max's claims against the judge were accepted as true and those claims

included, 1) the judge colluding with Lauara's attorneys in improperly disqualifying

Max's expert witness; 2) declined to accept Max's exhibits; 3) issued an order in

violation of a prior financial restraining order; 4) unfairly awarded money to Max's ex-

wife; made erroneous findings of fact; 5) held a procedurally deficient show cause

hearing; and 6) oversaw fraud by the opposing party.

38.     Max's Complaint against Judge Estes and the ruling cited in No. 37 above was determined based upon Max's Exhibit AA, Max's HEARING BRIEF FOR OCTOBER 11, 2023 HEARING... filed in Case 4:23-cv-00056-PK as Document 14-1 filed 07/23/23, and all the exhibits referenced in that pleading.

39.     The same Document and Exhibits were used and argued in Max's, FRCP RULE 60(b)(1) OBJECTION TO REPORT AND RECOMMENDATION, filed in related cases in this Court numbers, No. 4:23-cv-00007-DN-PK, No. 4:23-cv-0008-DN-PK, and No. 4:23-cv-00056-DN-PK. The decision in the Judge Estes case renders all Defendants' claims in these actions void.

40.     Judge Estes's improper Divorce Decree was the basis for the foreign judgment entered by Judge Faust whose Order declaring Max vexatious was the sole basis upon which the Heideman Defendants and the Resnick Defendants obtained a vexatious Order against Max. The foreign judgment was from Max's divorce from Lauara for which Heideman was paid to represent Max but instead breached his contract with Max, quit, and kept all Max's funds.

41.     Judge Faust's ruling that Max was vexatious followed Max's appeal exposing that the Nevada Court of Appeals overturned the judgment from the divorce court upon which the foreign judgment was based. Neither Judge Faust's nor Judge Eldredge's basis for finding Max vexatious is valid. Both violated Max's due process.

42.     Another case the Heideman Defendants referenced was Max's case

COMPLAINTANDJURY DEMAND - 12

in the U.S. District Court of Utah, Case No., 4:23-cv-00056-PK in which Max named Lauara and her attorney, Shawn Meador (Mr. Meador). At trial, Lauara and Mr. Meador testified that the couple's loans to Lauara's son Adam were still outstanding and requested they be awarded to Max at the value Max set for the loans. Max confirmed prior to the divorce trial and while he was represented by the Heideman Defendants that Lauara had been secretly repaid the loans to Adam.

43.      Max provided the North Carolina Bankruptcy Court's pleadings which confirmed that Lauara was listed as a creditor for the $650,000 in loans to Adam in Adam's bankruptcies and that the creditors had been repaid.

44.      Max has provided documentation confirming that both Lauara and Adam sold their creditor assets to Acquisitions Holding LLC, in 2014. See Exhibit C12, the docketing statement from the North Carolina bankruptcy court that confirms on 2/19/2014 Lauara sold her debt to Acquisitions Holding LLC, and the contracts, (Exhibit K), signed by Lauara and her sons Ryan and Adam who each sold their debt to the LLC on 2/7/2014. The Heideman Defendants had been informed by Max that Lauara had been repaid. Max had testified at his deposition in North Carolina prior to the Heideman Defendants quitting that Lauara had been repaid the loans. The Heideman Defendants had access to this information both from Max and the bankruptcy court. They chose instead to quit and kept all of Max's flat-cap fees.

45.      Max has provided the divorce court with the transcripts from North Carolina in 2019 in which Defendant Lauara and her son Ryan Lisk, who was also a

creditor in Adam's North Carolina bankruptcies and who also sold his creditor interest to Acquisition Holdings, testified that the debts had never been repaid.

46.    Max has provided an affidavit from Lauara's son Adam, drafted by Lauara's divorce attorney, Mr. Meador, which falsely claimed the loans had never been repaid. Lauara, Mr. Meador and Adam committed Rule 60 fraud on the court, violated Rule 11, and violated NRS 199.210 and NRS 239.330. See Exhibit C15, Opposition to Nevada Justice Ct. R. 11..., which includes Adam's affidavit, filed with the divorce court on June 21, 2023. The Nevada Attorney General has filed felony criminal charges against the Republican electors for violating NRS 239.330 for filing false election documents for President Donald Trump. The North Carolina bankruptcy court has obtained a summary judgment against Adam for perjury and undervaluing assets.

47.    The Heideman Defendants had this information yet allowed the divorce court to destroy Max in order to steal $150,000 from Max.

48.    At the divorce trial the loans to Adam, were awarded to Max at Lauara's insistence knowing she had been secretly repaid the loans that are now worth more than  $2,149,486, is more than double the amount of the foreign judgment that was entered by Judge Faust. See No. 7 in the Damages listed below and Exhibit C10, the amortization schedules for the loans to Adam awarded to Max. For their actions, Defendants are obligated to Max for this amount plus punitive and special damages in addition to Max's other claims shown in DAMAGES below, including Max's attorney fees.

COMPLAINTANDJURY DEMAND - 14

49.     Lauara knew Max had defeated the foreign judgment and that it would be overturned. Lauara knew that the vexatious order filed by Judge Faust was improper and that Max had argued the *Data Management Systems, Inc v. EDP Corp*. confirming foreign judgment was improperly entered.

50.     When the Heideman Defendants first argued that Max was vexatious they cited several cases that were not Max's. Following their collusion with Lauara they cited every case that involved Lauara and Max including Max's Complaint against Judge Faust in the U.S. District Court, Case No. 4:23-cv-00008-DN-PK.

51.     The $2,149,486 alone, that Lauara fraudulently cheated Max out of at the divorce trial confirms that the foreign judgment she obtained was improper and will be overturned and with it the improper vexatious litigant designation.

52.     The cases cited by the Heideman and  Resnick Defendants did not support Max being designated vexatious.

53.     Max has provided the divorce court documentation that Lauara filed a fraudulent Resident Witness Affidavit to confirm that she was a Nevada resident, to be allowed to obtain the divorce in Nevada. As a result, the Nevada divorce will be voided.

54.     Max has provided the divorce court with documentation that Lauara poisoned him on several occasions during the three months prior to her leaving Max during the time she and Mr. Meador, were secretly scripting her divorce from Max.

55.     At Max's deposition in March 2019, Mr. Meador divulged the product that Max had been poisoned with. Mr. Heideman was present.

COMPLAINTANDJURY DEMAND - 15

56.    Defendant Lauara has been provided with all this information including confirming documentation for the amounts of the **DAMAGES** listed below. Defendants cannot deny these.

57.    Mr. Heideman was hired to oppose Lauara at trial. Instead the Heideman Defendants and the Resnick Defendants used Lauara and her input to have Max declared vexatious knowing that Lauara was not credible and that the information she furnished was not credible.

58.    On August 2, 2023, Max sent his first Rule 11 Notice to Defendants and the district court requesting they correct their violations of URCP Rule 11 in the Order prepared by Mr. Heideman. See Exhibit C6. The Defendants declined to respond.

59.    The district court received Max's first Rule 11 Notice to Defendants on August 9, 2023, and declined to consider it violating Max's civil rights and due process. See Exhibit C14.

60.    On September 7, 2023, Judge Eldridge signed an Order drafted by Mr. Guelker's different from the Order Mr. Guelker had provided Max on June 22, 2023, see Exhibits 5 and 13, dismissing with prejudice Max's Complaint for Failure to Comply with Order Declaring Plaintiff A Vexatious Litigant. See Exhibit 13. Both Mr. Guelker and the district court declined to send Max a copy of the new Order. Both Mr. Guelker and the district court intentionally violated Max's due process and civil rights.

61.    On October 4, 2023, Max sent a second Rule 11 Notice to Defendants and the district court by email. See Exhibit 7. Max received no

COMPLAINTANDJURY DEMAND - 16

communication from the Defendants or the court.

62.    On January 2, 2023, Max called the district court inquiring about the case and first learned of, and was emailed a copy of the secret Order signed by the judge. The Order violates Rules 11 and 60.

63.    Defendants declined to make corrections to their improper orders and ignored Max's civil rights guaranteed by the Fifth and Fourteenth Amendments.

64.    The district court confirmed that in its opinion, it is permissible for a licensed attorney to steal $150,000 from a disabled, elderly, pro se litigant and in the process destroy his life.

65.    The Defendants never intended to allow Max his civil rights, and his due process or provide Max with a copy of the Order. The district court "**acted in a manner inconsistent with due process.**"

66.    The Defendants colluded to violate Max's due process by ordering that Max could not proceed without an attorney, then made it a requirement that to proceed without having the case dismissed Max had to have an attorney. They included language in the Order that made it impossible for Max to retain an attorney. Per the Defendant's collaboration, Max did not stand a chance to prevent the court from dismissing his complaint.

67.    In *Corla Jackson v. GMAC Mortgage Corp*... Case No. 19-7070 The U.S. Supreme Court, Case No 18-7070, Sept 13, 2018, citing *Old Wayne Mut. L. Assoc. v. Mcdonough,* 204 U. S. 8,27 S. Ct. 236 (1907) ruled,

COMPLAINTANDJURY DEMAND - 17

"Judgment is a void judgment if court that rendered judgment lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process, Fed. Rules Civ. Proc., Rule 60(b)(4),28 U.S.C.A., U.S.C.A. Const."

A Party Affected by VOID Judicial Action Need Not APPEAL. *State ex rel. Latty*, 907 S.W.2d at 486. It is entitled to no respect whatsoever because it does not affect, impair, or create legal rights." *Ex parte Spaulding*, 687 S.W.2d at 745 (Teague, J., concurring).

This cannot be ignored its fact recorded! Judgment is a void judgment if court that rendered judgment lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process, Fed. Rules Civ. Proc., Rule 60(b)(4), 28 U.S.C.A., U.S.C.A. Const. Amend. 5 —*Klugh v. U.S.*, 620 F.Süpp. 892 (D.S.C. 1985).

68.    The district court's order designating Max vexatious is void.

## **ARGUMENT**
## **MEMORANDUM OF POINTS AND AUTHORITIES**

69.    Max's Cross-Motion for Summary Judgment was provided but was never reviewed by the district court. It is provided herewith as Exhibit C8. The exhibits to Max's Cross-Motion for Summary Judgment were never reviewed or recorded by the district court. The exhibits are provided herewith in Exhibit C9. A review of the motion and its exhibits confirms that  1) the Heideman Defendants intentionally breached their contract with Max;  2) Max should have prevailed at trial;  and 3) the disgusting breach of contract by Defendants was intentional and they intentionally allowed Max to be financially destroyed and caused Max considerable health problems.

70.    For filing false pleadings with the district court and refusing to correct them, Defendants Gary R. Guelker and his firm Resnick & Louis, PC, the Resnick

Defendants are culpable as are the Heideman Defendants.

71.    Max has updated his list of damages and hereby certifies that the following list is true and correct and has been provided to, and can be corroborated by Lauara. The confirmation documentation is voluminous but can be provided by Max if requested.

### DAMAGES

| | | |
|---|---|---:|
| 1. | Motorhome, $95,000 | 95,000 |
| 2. | Repairs to Motorhome, $80,000-$100,000, | 90,000 |
| 3. | F550 Pickup, $30,000,                    **@ 50%** | 15,000 |
| 4. | Max's Utah home., Defendants Ordered to Purchase | 1,200.000 |
| 5. | Professional Services, PSC. $500,000 @ NPV | 500,000 |
| 6. | Wendover Ambulance (WAS), $2,000.000 @ NPV | 2,000,000 |
| 7. | Loans to Adam as of mid-December 2023. | 2,149,486  plus |
| 8. | Max's Disability CA Pension, $10,000 +, | 10,000 |
| 9. | Lauara's Legal Fees, $425,000 Plus NC Legal Fees. | 0 |
| 10. | Max's Disability Account $511,173, plus interest.  **@ 50%** | 255,586 |
| 11. | Max's Nevada Judgment $715,488 | 715,488 |
| 12. | Water Shares Awarded Lauara, $42,000 @ NPV | 42,000 |
| 13. | Taxes on Max's IRA Withdrawal, $60,000 | 60,000 |
| 14. | Loans to Mt. West Inc. to buy WAS, $315,517 + % **@50%** | 157,758 |
| 15. | Half of the Nevada Community Property $1,150,000 **@50%** | 575,000 |
| 16. | Quitclaimed the NV property to Lauara $62,500 @ NPV | 62,500 |
| 17. | Half the Value of the NV Home, $80,000 @ NPV | 80,000 |
| 18. | Personal Items stolen from Max, $25,000 | |
| | (from RV, F550, home). | 25,000 |
| 19. | Attorney Fees, **Exhibit A.** | 627,309 |
| 20. | Max's 31 shares of water, $186,000 + interest | 186,000 |
| 21. | Sold personal property, $20,000 @ NPV | 20,000 |
| 22. | Funds removed from businesses Oct/Nov. 2017, | |
| | $913,956 + Interest                    **@50%** | 456,781 |
| 23. | False Home Improvements to Max's House, $260,000. | 0 |
| 24. | Half of Lauara's IRAs  ($156,000) + Interest | 78,000 |
| 25. | Lauara's Award Max's IRA, $54,000 + interest. | 0 |
| 26. | Unfair Split of vehicles, $100,000 est.            **@50%** | 50,000 |
| 27. | Max's copy/filing fees, $50,443.70 as of Nov.  2023 | 50,443 |
| 28. | Lauara's purported loans to herself, $204,188 | 0 |
| 29. | Unknown Funds Removed from Community property, | |
| | TBD with subpoena of 2001-2018 financials by Lauara, | ? |
| 30. | Max's health damages, Costs to be determined | 500,000 |

31. Moving costs, TBD       ?
32. Half the rents of Mesa Business Complex and the Nevada

Home, and half the profits of the remaining Nevada businesses     ?

TOTAL WITHOUT INTEREST AND ?'s     9,486,871

PLUS TREBLE PUNITIVE DAMAGES     28,460,613

TOTAL     $37,947,484

COMPENSATORY MINIMUM     $1,000,000

$38,947,484 Plus

**Max's attorney fees: Nevada**

| | | | |
|---|---|---|---|
| a. | Wasilewski | $59,850 | |
| | Sanction | $8,531 | |
| | Depositions for NC | $10,141 | |
| b. | Amens | $79,571 | |
| | owed | $27,500 | |
| c. | Bushur | $41,500 | |
| d. | Heideman | $150,000 | |
| e. | Mendez | $350 | |
| f. | Anderson Fam. Law | $300 | |
| g. | Mustoe Law | $295 | |
| h. | Mike Kolsch | $125 | |
| i. | Jonathan King Reno | $150 | |
| j. | Jared Peterson | 7,054 | plus |
| k. | Misc. expenses  NC | $5,000 | |

**Max's attorney fees: North Carolina**

| | | | |
|---|---|---|---|
| a. | Cooper | $28,770 | |
| | Owed | $37,275 | |
| | Sanctioned | $14,845 | |
| b. | Alex Heroy | $50,000 | |
| | NC Judgment | $85,000 | |
| c. | Arbitration | $600 | |
| d. | Howell attorney fees | $5,120.00 | |
| e. | Blue Bee bankruptcy | $8,982 | |
| f. | 1st trip to NC Hearing | $6,000 | approximately |
| g. | Devore Action… | $350.00 | |
| h. | Jeff Dickerson | $50.00 | |
| | TOTAL | $627,279 | |

72.      Max is a venerable adult as defined by Utah Code 76-5-111(1)(a)(v).

The Heideman Defendants abused and "exploited" Max as defined by Utah Code 76-5-111.4(2)(c). The Heideman Defendants theft from Max was a violation of 76-(3)(a), a second-degree felony. The district court, Lauara, and the Resnick Defendants aided and

abetted the Heideman Defendants in violation of Utah Code 76-6-404(2) and 76-6-404(3)(a)(i).

## IV.    Injuries

73.    Max is a seventy-six-year-old disabled construction worker. As a result of the Defendants' actions, Max has suffered anxiety attacks, requiring hospitalization. In addition, Max has suffered from depression and has been financially destroyed by the Defendants actions.

74.    Before the divorce Max traveled extensively and enjoyed life. Max's quality of life was intentionally destroyed by the Defendants' violation of his due process, his civil rights, and Max's right to and ability to retain an attorney.

## IV.    Relief

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

1.    For special damages as are shown at trial restoring Max to his pre-divorce financial status;

2.    For treble punitive damages against named individuals as may be allowed by law;

3.    For pre-judgment interest on the damages assessed by the verdict of the jury, as allowed by law;

4.    For Plaintiff's costs and reasonable attorney fees incurred herein to date, pursuant to 42 U.S.C. 1988; and

5.    For such other and further relief as the Court deems just and proper

including criminal charges cited in 65 above for the theft from Max and the intentional damage to Max's health.

**V.**     **Certificate of Closing** Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase costs of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**A.**     I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

DATED this 3rd5 day of January 2024.

*/s/ Raymond Max Snyder*
Raymond Max Snyder

## AFFIDAVIT OF RAYMOND MAX SNYDER

I, Raymond Max Snyder, swear upon oath and state the following:

1.     I am the Claimant in the above action.
2.     I prepared the foregoing, Complaint and Jury Demand.
3.     I hereby certify that all statements in the above-referenced pleading, cited, are true and correct. I have examined this affidavit and hereby affirm its contents to the best of my knowledge to be true and correct.

DATED this 3ʳᵈ day of January 2024.



Raymond Max Snyder

State of Utah           )

                        )SS

County of Sevier      )

    On the 3 day of January, 2024, personally appeared before me, a notary public, Raymond Max Snyder, known (or provided) to me to be the person whose name is subscribed to the Affidavit, who acknowledged that he executed the above instrument freely and voluntarily for the purpose therein stated. IN WITNESS WHEREFORE, I have set my hand and affixed my seal the day and year first written above.

Notary Public

KATIE HA'O
Notary Public - State of Utah
Comm. No. 712144
My Commission Expires on
May 21, 2024

COMPLAINTANDJURY DEMAND - 23